UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCIA TURNER,

        **Plaintiff,**

vs.

NEPTUNE TOWING & RECOVERY, INC.,

        **Defendant.**
_____/

*Consolidated with*             Consolidated Case No. 8:09-CV-1071-T-27AEP

NEPTUNE TOWING & RECOVERY, INC.,

        **Plaintiff,**

vs.

DRUMBEAT II, et al.,

        **Defendants.**
_____/

## ORDER

Before the Court is Turner and Workman's "Motion for a New Trial/Motion to Alter or Amend a Judgment Notwithstanding the Decision and Order" (Dkt. 312). Upon consideration, the motion is GRANTED *in part* and otherwise DENIED.

### Standard

Fed. R. Civ. P. 52(b) vests the Court with discretion to amend findings that were made after a bench trial or to make additional findings of fact. Rule 59(a)(2) provides the Court with discretion to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Rule 60(b) authorizes the Court, in its discretion, to relieve a party from a final judgment based on "(1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence . . . , (3) fraud . . . ,

misrepresentation, or misconduct by an opposing party, . . . or (6) any other reason that justifies relief."

## Discussion

In a lengthy (in violation of the page limitation in the Local Rules), rambling motion, replete with attacks on witnesses, opposing counsel and the Court, Turner and Workman again seek reconsideration of the Court's order after trial (*see* Dkt. 299). Their motion is based on several arguments that were previously made in their "Motion for Damages, Reasonable Court Costs and Attorney Fees Sustained by Plaintiffs, Due to Defendant Neptune's Wrongful Detention of DRUMBEAT II for the Alleged Salt Creek Marina Lien" (Dkt. 304) and their "Motion to Compel Neptune Towing & Recovery, Inc. and Viorel Doni Iosipan to Restore DRUMBEAT II Prior to Any Possible Sale to What it Was at the Time of Towing it from Michael Hribar's Residence on or about March 8, 2009, [And] That the Court Recognize Turner and Workman's Homestead Declaration of the DRUMBEAT II" (Dkt. 308).

Turner and Workman contend that the Court "has been deceived as to the force and credibility of evidence presented by Neptune . . . and has been influenced by considerations outside the record," and that the order indicates " a gross misunderstanding of the key elements of this case." (Dkt. 312, p. 6). They complain of "many factual and legal errors" and that the damages awarded are not supported by the evidence. *Id.* Essentially, they suggest that every witness on the opposing side lied, that Workman and Huffman's testimony was the only credible testimony, and that the Court did not pay attention to the testimony and was biased against them. They seek a new trial and judgment in their favor.

Many of these arguments were previously rejected (Dkt. 311) and are rejected again for the same reasons. Turner and Workman's remaining arguments are likewise without merit, with the

exception of one contention regarding Turner's bailment claim.[1]

First, Turner and Workman's quarrel with the Court's factual findings does not provide a persuasive basis for a new trial. Determinations of witness credibility and the resolution of conflicts in the evidence are inherently the responsibility of the trier of fact and do not afford a basis for a new trial. *See, e.g., Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987) (new trial was not required where there was conflicting testimony and the fact-finder was called upon to make credibility determinations and to weigh the evidence); *Bauman v. Centex Corp.*, 611 F.2d 1115, 1119 (5th Cir. 1980).[2] Nor is a new trial or amended judgment warranted based on the claimed factual errors set forth in Turner and Workman's motion. The asserted factual errors either: (1) involve disputed facts or credibility determinations that were resolved against Turner and Workman, (2) are not based on evidence that was admitted into the record, or (3) consist of minor discrepancies that would not change the result.[3]

---

[1] Contrary to Turner and Workman's apparent suggestion, numerous issues were resolved in their favor. First, no amounts were awarded for Lippincott's storage of the canvas top, notwithstanding Neptune's request for more than $4,000. Second, recovery on the Salt Creek claim was limited to the bond. Third, Neptune was not granted a towing lien under Fla. Stat. § 713.78, as the plain language of the statute does not apply to vessels towed on Florida's waterways by other vessels. Further, although Turner and Workman claim prejudice on account of the potential federal preemption of a towing lien under § 713.78, that conclusion was actually resolved in their favor. Indeed, the order specifically held that Neptune was not entitled to a federal maritime lien for necessaries based on the towage from Hribar's residence. Fourth, the salvage claim was reduced from the $8500 requested by Neptune to $3000. Fifth, Neptune's requested storage expenses of some $4500 per month were reduced to $760 for the first three months and $960 plus electricity for the remaining months, along with $1200 in monthly dewatering costs. Contrary to Turner and Workman's argument, these amounts were determined based on the evidence at trial. Finally, to the extent Turner argues that a judgment was entered against her on Neptune's *in personam* claim, she is mistaken. The only judgment entered against Turner was on the claims in her amended complaint.

[2] The Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit made prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[3] Unfortunately, because of Turner's medical issues, the trial was prolonged, spanning from October, 2010 to August, 2011. The presentation of the evidence was accordingly somewhat disjointed, at times confusing, and certainly hotly disputed in every respect. As a result, there are indeed some minor factual errors in the Court's order. Notwithstanding, each asserted factual error has been closely examined, compared to the Court's notes, and determined not to have been material to the ultimate findings and conclusions. For example, Workman hired Lippincott Marine to construct the hardtop for the boat in 2001, well before it was hired to do the canvas work. The recitation at p. 8 of the order (Dkt. 299) is therefore inaccurate. Lippincott's lien, however, involved its canvas work, not the hardtop. According to Lippincott, the December 12, 2005 invoice represented its canvas work, for which it was hired in 2004 and completed in November, 2005. His last quote to Workman was "a little over $ 6,000 plus tax," and he was paid a $ 3,000 deposit. And while Turner and Workman continue to accuse Steven Lippincott of theft, based on Lippincott's testimony, the Court found otherwise, and reiterates its finding that Workman falsely reported to the police on two occasions that

Second, Workman's reliance on a statute of limitations defense is misplaced because laches governs the time to sue in admiralty cases, not federal or state statutes of limitations.[4] *See Puerto Rico Ports Auth. v. Umpierre-Solares*, 456 F.3d 220, 227 (1st Cir. 2006). Workman failed to demonstrate prejudice with respect to three of the liens, rendering any laches defense inapplicable. As for the Salt Creek lien, prejudice was only shown insofar as the vessel was exposed to a second process to collect an amount equal to the bond posted by Turner and Workman. To avoid this prejudice, execution was limited to the bond.

Third, Workman has not provided any persuasive reasons for a new trial or judgment as a matter of law on Neptune's salvage claim. Contrary to Workman's contention, Neptune's salvage claim was part of this litigation well before the April 2010 second amended complaint. As noted in the order denying Turner's motion to dismiss or strike Neptune's salvage claim:

> Neptune's amended complaint, filed on December 14, 2009, plainly informed Turner that its action was based, in part, on a claim for salvage. (Case No. 8:09-cv-02475-JDW-AEP, Dkt. 13). In fact, Turner moved to dismiss Neptune's amended complaint on the ground that Neptune "failed to properly state a valid claim for a maritime lien *or for salvage* . . . ." (Dkt. 34 ¶ 9) (emphasis added). Further, Turner's motion for summary judgment was partially denied precisely because there were genuine fact issues as to Neptune's claim for salvage. (Dkt. 38, adopting Dkt. 25). And as Judge Porcelli observed in his February 9, 2010 order denying Turner's Motion to Vacate Arrest of Vessel:
>
> Neptune specifically alleged on November 11, 2009, in its Response to Turner's Motion for Summary Judgment that its services "may classify as salvage." (Dkt. No. 18 ¶ 16.) Moreover, Neptune's Verified Answer (Dkt. No. 6) contained sufficient facts to place Turner on notice of a potential salvage claim, meeting the liberal pleading requirement of Rule 8(a) of the Federal Rules of Civil

---

Lippincott had stolen the canvas from the boat. (Dkt. 299, p. 8). The Court's factual error concerning the hardtop and where the work was performed was therefore immaterial to the final determination that Lippincott has a maritime lien for the upholstery work it performed and for which it was not paid.

[4] Therefore, any question as to the precise date on which Maltrap's work was completed is immaterial. The November 30, 2005 date, which was simply used for calculating prejudgment interest, is based on an inference drawn from Maltrap's testimony that his work was performed in October and November of 2005.

4

> Procedure. . . .
>
>> (Dkt. 56 n.5). In short, Turner had notice of Neptune's salvage claim long before Neptune filed the second amended complaint and long before the close of discovery.

(Dkt. 135).

As for the merits, a claim for salvage arises where there is (1) a marine peril, (2) services which were provided voluntarily or not required under an existing contract, and (3) success in whole or in part, or services which contributed to success. *The SABINE*, 101 U.S. 384, 384 (1879). Marine peril does not mean that the distress must be immediately impending. *Fort Myers Shell & Dredging Co. v. Barge NBC 512*, 404 F.2d 137, 139 (5th Cir. 1968).

As discussed, Hribar had a right to have the vessel towed from his property.[5] Iosipan, with extensive salvage and towing experience, determined that the DRUMBEAT II was in danger of sinking if he attempted to tow the vessel without pumping her out. The DRUMBEAT II's owners had essentially abandoned her and had failed to take the steps necessary to prepare her for safe towing. Under the circumstances, Neptune could have refused to tow the vessel. Instead, Neptune voluntarily dewatered the DRUMBEAT II in order to safely remove her from Hribar's residence.

It is of no moment that there was a contract between Hribar and Neptune. "In ascertaining whether services rendered by a salvor are voluntary, 'the rule is that nothing short of a contract to pay a given sum for the services to be rendered, or a binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will operate as a bar to a meritorious claim for salvage.'" *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 966 F.2d 602, 605 (11th Cir. 1992) (quoting *The Camanche*, 75 U.S. (8 Wall.) 448, 477 (1869)). Although pre-marked as a trial exhibit, the contract was not admitted into evidence because of Turner's inability to establish the necessary foundation for its admission. Further, there was no showing that Hribar agreed to pay Neptune

---

[5] Contrary to a factual error asserted by Turner and Workman, Iosipan testified that the vessel was not locked to the dock.

anything under the contract, much less a given sum for the specific services that were rendered, including dewatering.

With the exception of the bailment claim, Turner and Workman's remaining arguments are likewise without merit and therefore are rejected.[6]

As for the bailment claim, Turner is entitled to an amended judgment. "In a bailment situation, the plaintiff makes a prima facie case for damages when he shows that the bailed property was delivered to the bailee in good condition and that it was damaged while it was in the care,

---

[6] As for Turner and Workman's claim of judicial bias or prejudice, the Court made credibility determinations based on the demeanor of the witnesses and inconsistencies in their testimonies, and resolved the conflicting evidence as set forth in the order. To the extent they complain of difficulty, Turner and Workman represented themselves at their own peril. They were required to follow the same evidentiary and procedural rules during trial as any party, whether represented by counsel or not. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Time and again, Turner and Workman failed to follow the rules of evidence and the rules of procedure, ignored directives from the Court, and persisted in making argument or pursuing lines of inquiry into irrelevant and/or scandalous matters on which the Court had either sustained objections or otherwise determined were inadmissible. Notwithstanding the Court's instructions to refrain from pursuing those matters, Turner and Workman persisted, prompting judicial admonitions, including the threat of contempt citations if they did not heed those admonishments. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (contempt sanction necessary to protect the orderly administration of justice and to preserve the dignity of the tribunal).

The open hostility between Turner and Mr. Iosipan, the first witness called by Turner, set a poor tone for the trial. Iosipan, the owner of Neptune Towing and the individual who towed Turner's boat, was a hostile witness. Turner's inartful attempts to attack his credibility, and mostly his integrity, prompted angry responses from Iosipan, objections from Neptune's counsel, and admonitions from the bench. Compounding this was Turner and Workman's inartful prosecution of their claims and their lack of understanding of the rules of evidence and procedure, despite their apparent attempts to follow the rules. Added to this was their inability or unwillingness to follow the Court's directives and comply with its rulings. By arguing with the Court and disregarding its rulings on evidentiary objections, they drew admonitions.

Turner and Workman should be reminded that they were not the only ones who received admonitions and the threat of contempt citations, as Neptune's counsel was also on the receiving end when he failed to follow the rules or the Court's directives. If Turner and Workman perceived the Court's admonishments and efforts at courtroom administration as demonstrating impatience, annoyance, or even anger, those statements, even if stern, do not demonstrate the type of bias supporting the relief sought. *See Liteky v. United States*, 510 U.S. 540, 556 (1994). In any event, the trial transcript will accurately depict the exchanges between the Court and either Turner or Workman and the events leading to those exchanges, including the Court's attempt to administer its courtroom and the trial.

To the extent Turner and Workman complain that they were denied an opening statement and closing argument, such decisions are committed to the sound discretion of the Court. *See Clark Advertising Agency, Inc. v. Tice*, 490 F.2d 834, 836-37 (5th Cir. 1974); *Peckham v. Family Loan Co.*, 262 F.2d 422, 425 (5th Cir. 1959) ("If argument is granted in a nonjury case it is as a privilege and not as of right. The matter of permitting argument is within the court's discretion."); *see also Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.*, 659 F.2d 168, 182 (D.C. Cir. 1981) (finding no abuse of discretion where party was prevented from making opening statement and closing argument in nonjury trial). Likewise, any complaint that Workman or Turner's presentation of evidence was cut short is rejected, as the Court has broad discretion to control the presentation of evidence, particularly in a bench trial. *Harbor Tug & Barge, Inc. v. Belcher Towing Co.*, 733 F.2d 823, 827 (11th Cir. 1984) (in nonjury trial, the court has "considerable latitude in expediting the presentation of evidence"); *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1477 (11th Cir. 1984) ("A trial court has the authority and responsibility to control the examination of witnesses and the presentation of evidence in order to achieve the objectives of ascertaining truth and avoiding needless consumption of time. . . . The discharge of this responsibility necessarily entails the exercise of discretion.").

custody, and control of bailee." *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (quotation omitted). On further review, the Court concludes that Turner did establish a prima facie case, as she demonstrated that the DRUMBEAT II sustained at least some damage while in Neptune's custody. Specifically, as previously discussed, the undisputed evidence showed that the DRUMBEAT II received a ding in her hull after she was towed, and that prior to being appointed substitute custodian, Iosipan disposed of certain items of property that were on board the DRUMBEAT II.[7] Therefore, with respect to the bailment claim, Turner is entitled to an award of damages and a judgment in her favor.

Notwithstanding, Turner failed to offer any evidence to quantify the amount of her damages. For example, there was no evidence admitted into the record which showed the cost of repairing the ding in the DRUMBEAT II's hull or the value of each item that Neptune disposed of. Turner is therefore only entitled to an award of nominal damages. Any other amount would be the product of speculation, conjecture, and guesswork. *See Schimpf v. Reger*, 691 So. 2d 579, 580 (Fla. 2d DCA 1997) ("[T]here must be a reasonable basis in the evidence for the amount awarded. . . . It is incumbent upon the party seeking damages to present evidence to justify an award of damages in a definite amount . . . . Damages cannot be based upon speculation or guesswork, such as that which has been advanced to us, but must have some reasonable basis in fact.").

Turner contends that she is entitled to a new trial on damages. The decision whether to grant a new trial on damages is committed to the sound discretion of the trial court. *Sykes v. McDowell*, 786 F.2d 1098, 1105 (11th Cir. 1986). A new trial is properly permitted where the judgment is inadequate based on the evidence in the record. However, this Court declines to exercise its discretion to reopen the judgment simply because a party neglected to put on the evidence necessary

---

[7] Iosipan testified that the ding was "the size of a nail." The items that Iosipan admitted disposing of included food, a jig saw, and certain expired items. He further testified that several other items were not thrown away but, instead, were moved to and stored in his shop.

to prove his or her case.[8] *See George v. GTE Directories Corp.*, 195 F.R.D. 696, 701 (M.D. Fla. 2000) ("[A] judgment should not be set aside merely because the losing party can probably present a better case on another trial.").

Turner relies on several personal injury cases in which the jury returned a zero-dollar verdict that was inadequate, based on the evidence in the record. These cases do not compel a different result. In *Gainza v. Stearns*, 785 So. 2d 683 (Fla. 3d DCA 2001), there was evidence that the plaintiff incurred $17,861 in medical expenses. Likewise, in *Massey ex rel. Massey v. Netschke*, 504 So. 2d 1376 (Fla. 4th DCA 1987), there was evidence that the plaintiff had in excess of $15,000 in medical bills. Although *Molinari v. Florida Key Electronic Cooperative Association*, 545 So. 2d 322 (Fla. 3d DCA 1989) did not mention a specific amount of damages, there is nothing in *Molinari* which would support Turner's contention that she is entitled to a new trial simply because she failed to submit any evidence to quantify the amount of her damages. Simply put, Turner is not entitled to a new trial to offer evidence that she neglected to submit at trial.

Finally, on a separate matter not raised by Turner and Workman, the Court determined in reviewing the record that the amount awarded for the Salt Creek Marina debt must be reduced. At trial, counsel for Neptune expressly stated that the Savill debt was not involved in this litigation. Notwithstanding, the damages Neptune requested (and was awarded) for the Salt Creek Marina debt included $1,500 for a survey performed by Captain Savill. Accordingly, the Salt Creek claim must be reduced from $2,784 to $1,284. Recovery of this debt shall be limited to the $2,784 bond posted by Turner, and the balance of the bond shall be applied toward the vessel's remaining liability to

---

[8] Turner's contention that she was not permitted to introduce evidence of her damages is meritless. Although a list of missing items was received into evidence to assist Workman in testifying, it was redacted to remove Turner and Workman's estimates of the value of each item, as the document had not been timely produced to opposing counsel. Notwithstanding the redaction, Workman was not asked, and did not testify, as to the cost of the damage to DRUMBEAT II or the value of the missing items that formed the basis of Turner's bailment claim. Turner certainly could have elicited this testimony from Workman, or she could have testified herself, but she chose not to do so.

Neptune.[9]

## Conclusion

Accordingly, Turner and Workman's "Motion for a New Trial/Motion to Alter or Amend a Judgment Notwithstanding the Decision and Order" (Dkt. 312) is GRANTED *in part*.

(1) Turner is entitled to judgment in her favor on her bailment claim in Count V of her amended complaint and an award of nominal damages in the amount of $1.00. Neptune is entitled to judgment on the remaining counts of Turner's amended complaint.

(2) The clerk is directed to enter an amended judgment on Turner's amended complaint, as set forth above.

(3) The motion is denied in all other respects.

(4) The claim related to the Salt Creek Marina debt is reduced to $1284. Recovery on the Salt Creek Marina claim shall be limited to the bond, with the remainder of the bond applied to reduce the vessel's liability to Neptune.

(5) Neptune is entitled to an amended judgment against the DRUMBEAT II, her engines,

---

[9] Turner and Workman now appear to take the position that they did not agree to allow the bond to be applied to the Salt Creek debt, as they claim to have "stipulated only to entering the bond into the court registry for offsetting any other charges or costs that may come against the vessel from anything that the court awarded to Neptune." (Dkt. 312, p. 38, ¶ 43). However, in seeking reconsideration of an order which denied their initial request to transfer the bond, they stated:

> Since this cash bond was originally posted for the release of the vessel Drumbeat II, for the alleged claim of Salt Creek Marina in the amount of $2,784.00, and this is one of the alleged claims that are pending in this court, jurisdiction in this Federal Court is appropriate and relevant at this point. . . . The $2,784.00 [bond] is available for use, and it makes sense to not let it be forfeited for lack of tendering into the appropriate court, *for whatever dispersion this court deems is appropriate.*"

(Dkt. 290, pp. 2-3) (emphasis added). The motion was granted (Dkt. 295), and the clerk was directed to transfer the bond, based on the parties' stipulation "that the bond be transferred to this Court and applied in this action to satisfy *any judgment against DRUMBEAT II, including [the Salt Creek] lien.*" (Dkt. 294) (emphasis added).

Turner and Workman's new position is contrary to their motion for reconsideration. And in any event, there is no prejudice in applying the bond for its originally-intended purpose. As discussed, the only potential prejudice that would arise would be if Neptune was allowed to collect on the Salt Creek claim apart from the bond.

tackle, apparel, and other appurtenances, *in rem*, in the amount of $26,698.36[10] plus prejudgment interest.

(6) The clerk is directed to enter an amended judgment as set forth in paragraph 5.

(7) The clerk is directed to release the cash bond in the amount of $2784 (Dkt. 298) to Neptune.

(8) Neptune's credit bid is reduced to $78,498.36.[11]

**DONE AND ORDERED** this 26th day of October, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties

---

[10] The amount of the amended judgment is comprised of maritime liens of:

(1) Maltrap: $1260.56, plus prejudgment interest since November 30, 2005,
(2) Lippincott: $3489.55, plus prejudgment interest since December 12, 2005,
(3) Banger: $1356.25, plus prejudgment interest since December 3, 2008, and
(4) Salvage: $3000,

plus pre-arrest expenses of storing and maintaining the salvaged property prior to its arrest:

(1) storage from March 2009 through May 2009: $2280.00,
(2) storage/electricity from June 2009 through November 2009: $6012.00, and
(3) dewatering from March 2009 through November 2009: $10,800.00,

less $1500, which remains after the $2784 bond is applied to satisfy the $1284 Salt Creek claim.

For clarification purposes, the Salt Creek claim has been omitted from the amended judgment against the vessel, instead of simply stating that execution is limited to the bond.

[11] The credit bid consists of the amended judgment against DRUMBEAT II in the amount of $26,698.36, plus *custodia legis* expenses of $51,800.